| | | 501 KAR 6:999 |
|---|---|---|
| **KENTUCKY CORRECTIONS** Policies and Procedures | Policy Number  9.1 | Total Pages  14 |
| | Date Filed  November 7, 2016 | Effective Date  January 6, 2017 |
| References/Authority  KRS 196.030, 196.035, 196.037(2), 197.020, 197.025, 503.010, 503.020 through 503.050, 503.070 through 503.120  P&P ACA 4-4090; 4-4190; 4-4191; 4-4199; 4-4202; 4-4203(M); 4-4204(M); 4-4281(M)  ACA 3A-01, 3A-23, 3B-01, 3B-02, 3B-03, 3B-06, 3G-01, 3G-02, 3G-04  CPP 8.3, 8.6, 9.7 and 9.9 | Subject  **USE OF FORCE AND MECHANICAL RESTRAINTS** | |

I.  DEFINITIONS

"Electric disabler" means any electrical device or piece of equipment that is designed specifically to control, manage, or incapacitate the movement or actions of another person.

"Deadly physical force" is defined in KRS 503.010(1).

"Force" means physical force or deadly force to the extent such force is authorized under this policy and the law of the Commonwealth of Kentucky.

"Mechanical restraint" means devices approved by Corrections for the purpose of limiting movement for security or medical reasons (such as handcuffs, security belts, leg irons, arm bed restraint, leg bed restraint, hospital bathroom restraint, restraint chair, four or five point restraints).

"Physical force" is defined in KRS 503.010(4) and includes restraint and use of chemical agents.

"Planned physical force" means the prearranged use of physical force or deadly physical force employed to prevent the loss of life, serious injury to staff or inmates, serious damage to state property or escape.

"Reactive physical force" means physical force or deadly physical force employed in response to a specific act. Reactive physical force is employed to prevent the loss of lives, serious injury to staff or inmates, serious damage to state property or escape.

II.  POLICY and PROCEDURE

    A.    1.    Deadly physical force shall not be used unless the person believes that this degree of force is necessary to:

Moorman - 005524

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 2 |

    a.    protect himself or another from:

        (1)    imminent death;
        (2)    serious physical injury;
        (3)    kidnapping; or
        (4)    sexual intercourse compelled by threat or force.

    b.    prevent an escape.

2. Deadly physical force may be used by a correctional officer, probation and parole officer, or other person authorized to act as a peace officer, in order to prevent the escape of an inmate as authorized by KRS 503.090 during transportation. However, if an escape is accomplished and the inmate is being pursued for recapture, rather than the prevention of escape, the amount of physical force permitted shall revert to that necessary to make an arrest.

3. Physical force may be used as authorized by KRS Chapter 503:

    a.    for self-protection;
    b.    for protection of another;
    c.    to prevent escape;
    d.    to protect property;
    e.    for a medical reason if properly authorized by medical personnel; and
    f.    to subdue an unruly inmate.

4. Only the minimum amount of force necessary shall be used to accomplish the purpose for which the use of force was required.

5. If physical force is potentially necessary in a staff member's position, the staff member shall be trained in the approved methods of applying physical force.

6. Staff members shall not use physical force against any inmate except:

    a.    in self-defense;
    b.    to prevent injury to other persons;
    c.    to prevent or quell a disturbance;
    d.    to prevent an escape;
    e.    for approved medical reasons;
    f.    to facilitate transportation or movement from one location to another within an institution;
    g.    to prevent substantial property loss; or
    h.    to strip an inmate of all of his clothing if he exhibits suicidal gestures or expressions, or upon the recommendation of clinical

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 3 |

personnel. An inmate shall be provided a pair of boxer shorts or an approved suicide resistant garment or blanket unless he is destroying his clothing, has a history of setting fires, or is jamming locks and doors.

7. A sufficient number of personnel shall be used, if controlling or moving an unruly inmate, to minimize the necessity of striking or inflicting bodily injury.

8. Sufficient personnel and only that amount of force or restraint which is reasonably necessary, shall be used to remove property and clothing from an inmate or to remove an inmate from a cell, room or living area when, due to an inmate's behavior or mental state, he engages in:

    a. shouting or yelling verbal insults which result in disruption of cell, room or living area;

    b. destruction of property in cell area, such as sprinkler heads, plumbing, windows, etc.;

    c. physical disruption to include throwing of liquids, foods, feces, etc.; or

    d. self mutilation, suicidal gestures, or suicidal expression.

9. In any situation requiring the application of force, employees shall not use force-related equipment other than that which is authorized and issued for each specific incident by the delegating authority. Under normal working conditions, unless authorized by the Commissioner, employees shall not carry any force-related equipment, other than electric disablers, handcuffs and O.C. spray, if authorized by the warden of the institution where the staff member is employed. Any staff member authorized to carry O.C. spray under normal working conditions, pursuant to this section, shall be trained and qualified to use chemical agents in accordance with CPP 4.3.

10. Firearms shall not be used unless other means have been attempted or given due consideration.

B. Deaf and Hard of Hearing Inmates

    1. Hand restraints shall be used:

        a. When transporting a deaf inmate to or from another institution;

        b. When transferring a deaf inmate in or out of a special management unit;

Moorman - 005526

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 4 |

      c. When transporting to on-site medical care; and

      d. As needed in response to security threats.

  2. Off-Site Medical Care

      a. Two-point hand restraint system shall be used on deaf inmates for off-site medical care for effective communication while considering the safety and security of the inmate and those located at the off-site medical care facility; and

      b. If a medical decision made by medical professionals requires removal or adjustment of hand restraints, institutional staff shall follow the procedures of CPP 9.14.

C. In the event of an escape, a riot or any disorder, it shall be made evident to the inmates that authority prevails; that order shall be restored and that means are available to restore it by application of necessary force as ordered by the Warden or his designee. The Shift Supervisor shall be responsible if a decision needs to be executed immediately when the Warden or his designee cannot be contacted, and in order to prevent escape or to protect inmates, staff and state property or to maintain control of the institution. In the event of an escape in progress, the decision to use force, including deadly force, shall be made by the correctional officer or other person authorized to act as a peace officer charged with the responsibility for preventing the escape.

  1. If the situation permits, an attempt shall be made by the correctional officer or institutional member other than a supervisor to reason with inmates engaged in any disorder prior to the application of any force.

  2. If the situation permits, the Warden, a Deputy Warden, the Duty Officer, or staff supervisor shall hold discussions, either directly or through an intermediary, to clarify grievances, facilitate understanding and to seek cooperation.

  3. If reasoning fails or the rapid development of the situation does not permit reasoning, a direct order shall be given to the inmates to terminate the disorder. This order shall not be given until it may be enforced effectively by the application of necessary force. Orders for a show of force or the application of force may be given pursuant to Section G.

D. A correctional officer or probation and parole officer shall not sacrifice his own safety or the safety of another in order to prevent injury to an inmate.

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 5 |

E. Except as otherwise authorized by CPP, corrections employees shall use only weapons, ammunition and equipment issued by the institution or appropriate law enforcement authorities.

F. Following the use of force where physical injury may have occurred, medical staff shall examine the staff member and the inmate.

G. Levels of Force.

The degree of force applied in any given situation shall be in accordance with this policy and consistent with the degree of severity of the particular situation encountered.

    1. Level One Force - Physical Force-Restraint

        a. Physical restraint shall be immediate and the first level of response if:

            (1) a verbal form of corrective action fails; and
            (2) it is necessary due to the seriousness of an inmate's conduct.

        b. A mechanical restraint shall not be used unless:

            (1) another intervention has first been considered and rejected;
            (2) it is necessary to prevent injury to self or another;
            (3) it is necessary to prevent substantial property damage; or
            (4) an inmate is being transported, within or without the institution, as outlined in CPP 9.9.

Circumstances may occur where it shall be necessary to physically subdue an inmate. Every effort shall be made to ensure that there are sufficient personnel present to minimize the need for striking the inmate or inflicting bodily injury.

        c. If a mechanical restraint is used, the least amount of force necessary to enforce an institutional rule shall be used.

        d. Mechanical restraints shall not be used:

            (1) As a method of punishment;
            (2) To quiet a noisy inmate;
            (3) About the head or neck of an inmate;
            (4) In a way that causes undue physical discomfort;
            (5) To inflict physical pain; or
            (6) To restrict the blood circulation or breathing of the inmate.

Moorman - 005528

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 6 |

    e.    The following procedures shall serve as a minimum standard for the progressive use of mechanical restraints.

        (1)    Restraint Control Level One – handcuffs may be used for escorting purposes or control within a cell, room or living area.

        (2)    Restraint Control Level Two – (a) handcuffs and leg restraints may be used for escorting purposes and (b) handcuffs, leg restraints, hospital bathroom restraint, and bed restraints may be used for control within a medical setting.

        (3)    Restraint Control Level Three – handcuffs, leg restraints, belly chains, and black box shall be used for transportation purposes.

        (4)    Restraint Control Level Four – restraints which prevent an inmate from general movement, using toilet facilities or eating, i.e., restraint chair.

        (5)    Restraint Control Level Five – four or five point restraints that secure an inmate to the bed, shall only be used in circumstances where an inmate is in danger of hurting himself or has assaulted others and lesser levels of restraint have not been effective in controlling the physical threat or potential for continued assault that the inmate poses to himself or others. Advance approval for placement of the inmate in Restraint Control Level shall be given by the Deputy Commissioner of Adult Institutions or his designee, after consultation with medical to determine the appropriate manner in which the inmate should be placed on the bed.

    f.    A mechanical restraint shall not be used longer than the condition outlined in (b) prevails.

    g.    Determination for placement in mechanical restraints for levels one through four shall be made by:

        (1)    on site supervisory personnel who have observed the inmate's behavior; or

        (2)    on the recommendation of medical or mental health personnel.

Moorman - 005529

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 7 |

    h.    When mechanical restraints of any level are used, the restrained inmate shall be visually monitored at a minimum of every fifteen (15) minutes. Inmates subjected to Restraint Control Levels 4, and 5 shall be monitored more frequently based on administrative or clinical judgment.

    i.    Level Five restraints may be used to control inmates who throw food, feces, urine or bodily fluids on Corrections personnel or other individuals.

    j.    When using Restraint Control Level 4 or 5, the following procedure shall be followed:

        (1)    Use of Level 4 or 5 restraints shall not last longer than the behavior continues as observed and documented by monitoring personnel.

        (2)    If it is believed that extended use past two (2) hours is necessary, medical personnel on site shall physically check the inmate and apprise the health authority or designee of the inmate's condition. The health authority or designee shall determine if the inmate is medically able to tolerate further restraint.

        (3)    Authorization for continued use of restraints beyond an initial two (2) hour extension shall be given by the health authority or designee based on personal examination of the inmate and only for reasonable periods of two (2) hour increments. The inmate shall not be continued in restraints beyond any two (2) hour increment without a further personal examination and authorization by the health authority or designee.

    k.    If it is determined that the process can be conducted safely, an inmate who is in Level 4 or 5 control restraints shall be allowed to eat and use toilet or bathroom facilities.

    l.    If the inmate's behavior has improved, restraint levels shall be decreased according to the levels outlined in (e).

2.    Level Two Force - Show of Force

    a.    In situations where available, lesser avenues of persuasion have been applied and failed, a show of force may be employed, where it is deemed practical and appropriate to the situation. A show of force may include maneuvering by the emergency squad or display

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 8 |

of forces and equipment available for use if the necessity arises; however, it does not mean that all available means are displayed. Warning shots may be authorized to prevent a situation from escalating to the point that physical force or deadly force may be necessary. A 12-gauge shotgun shall be used as a warning shot. The warning shot shall be discharged in a direction where the projectiles shall not come into contact with or endanger a person. The use of warning shots shall be authorized by one of the following: Warden, Deputy Warden, Duty Officer, or Shift Supervisor.

    b. A show of force shall not be initiated unless ready to apply such force as and if needed.

3. Level Three Force - Use of Chemical Agents, Distraction Devices and High-Pressure Water

    a. These means shall be initiated only by one of the following:

        Warden
        Deputy Warden
        Duty Officer
        Shift Supervisor in situations that necessitate immediate actions

    b. Chemical agents shall not be used on an individual inmate except to:

        (1) prevent injury to himself or others;
        (2) prevent property damage;
        (3) prevent loss of life; or
        (4) when necessary for the purpose of enforcing the lawful rules of the institution.

    c. Before chemical agents are used on an inmate and where time and circumstances permit (for example, an inmate is locked in a cell and does not present an immediate danger to himself or others), the inmate's institutional and medical file shall be examined by appropriate staff to determine whether:

        (1) the inmate has a significant medical problem which may be adversely affected by the chemical agent; and

        (2) the inmate has a significant history of psychotic behavior and whether the individual may react significantly different than anticipated to chemical agents.

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 9 |

    d.    Chemical agents shall be used when deemed appropriate as minimum force necessary to control a disturbance.

           (1)    When chemical agents are used to quell a disturbance, they shall be dispensed only in amounts sufficient to achieve their intended purpose.

           (2)    Where possible, care shall be taken to see that those not involved in the disturbance are not subjected to the agent.

           (3)    Where possible, consideration shall be given to such environmental factors as wind direction and velocity, building size and design including HVAC systems when used indoors, and other factors that would enhance or detract from the use of the agent in order to optimize its effects upon the disturbance and minimize its effects upon those not involved.

           (4)    Manufacturer's recommended decontamination procedures for individuals and affected areas shall be followed as soon as the situation allows.

    e.    A medical examination shall be administered after the use of a chemical agent.

    f.    Chemical agents shall be stored in a locked vault or box and shall be issued only with authorization of the initiating authority.

    g.    The use of high-pressure water shall be limited to the amount necessary to achieve its intended purpose and shall not be used as a form of punishment.

4.    Level Four Force - Use of Physical Force other than Restraint (KRS 503.110)

    a.    Authorization shall be given by one of the following officials:

        Warden  
        Deputy Warden  
        Duty Officer  
        Shift Supervisor in cases where immediate decisions are needed.

    b.    Batons may be used:

           (1)    to control or contain any situations as deemed appropriate and necessary in using minimum force to maintain control;

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 10 |

  (2) to prevent harm to persons or prevent substantial damage to state property; or

  (3) by Corrections Emergency Response Team (CERT) for tactical or riot control purposes.

 c. Batons shall not be utilized for cell entry unless it is approved as a CERT activation.

 d. Serious care and consideration shall be given the situation at hand before batons are authorized.

 e. Batons shall be stored in a locked vault or box and shall be issued only with the authorization of the initiating authority.

 f. The purpose of the baton shall not be subverted by the use of large flashlights or other inappropriate devices.

 g. If an inmate is being subdued, care shall be exercised to avoid serious injury to an inmate's head, neck and any unprotected internal organs.

 h. Electric disablers shall be used only after all lesser degrees of force have been tried or given due deliberate consideration. When used, care shall be taken to avoid hitting the inmate above the neck.

5. Level Five Force - Use of Deadly Force (Weapons)

 a. Except in the event of an immediate need to use deadly force to prevent death or serious physical injury, kidnapping, or sexual intercourse compelled by force or threat, or to prevent an escape that is in progress, authority for the use of deadly force shall be exercised by one of the following:

  (1) Commissioner or Deputy Commissioner for Adult Correctional Institutions

  (2) Warden

  (3) Deputy Warden

  (4) Duty Officer

  (5) Shift Supervisor

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 11 |

    b.    If use of a firearm is necessary, it shall be limited to the reasonable degree of force necessary under the particular circumstances.

H.    Use of Force in Escape Situations

In the event of escape or attempted escape, the following rules shall apply:

1.    Use of force to prevent escape:

    a.    All institutional staff shall follow appropriate institutional escape or emergency plans for notification of the control center of the escape.

    b.    Officers shall consider all means available other than firearms whenever possible to prevent an escape.

    c.    During an escape or escape attempt, all officers shall initiate the following procedures:

        (1)    Follow appropriate institutional escape or emergency plans for notifying the control center of the escape attempt as soon as it is practical to do so.

        (2)    In a loud voice, twice order the inmate to halt.

        (3)    Fire upon the inmate when it is evident that he will escape if deadly physical force is not immediately used.

        (4)    An officer shall not fire upon any inmate escaping if it will endanger the lives of staff, civilians or other inmates not engaged in or assisting the escape.

        (5)    When firing, the officer shall always direct shots at the escapee, which are aimed to stop the escapee.

        (6)    Officers shall take care to identify anyone they see before opening fire to ensure that the person being fired at is, in fact, the attempted escapee or escapees.

        (7)    If the inmate is already on the fence and escape is imminent, the verbal warning shall not be required by the tower officer.

    d.    Corrections policy concerning how long the "escape" doctrine lasts and when deadly force shall be used to prevent the escape shall be that it lasts until the escaping inmate crosses the limits of the

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 12 |

property used in conjunction with the institution. Property lines shall be clearly identified through post orders.

    (1) Once the inmate has crossed the property line, if requested by the appropriate law enforcement authority, institutional staff may apprehend the escaped prisoner pursuant to KRS 196.037(2).

    (2) For the use of physical force authorized in making the arrest, see KRS 503.090.

I. Use of Force in Hostage Situations

1. Sound judgment and great care shall be used when evaluating any incident involving hostages. The lives of the hostages shall not be jeopardized by the use of force unless the risk to the public and other innocent persons is so great as to demand it. The decision to use deadly force shall be made only by the Commissioner of Corrections, Deputy Commissioner for Adult Institutions, Warden, Deputy Warden, Duty Officer, CERT Commander, or Incident Commander. The Deputy Warden, Duty Officer, CERT Commander or Shift Supervisor may make the decision to use deadly force only if death or serious physical injury is imminent.

2. The Shift supervisor shall contain the situation and immediately notify the Warden, Deputy Warden or Duty Officer upon learning of any incident involving hostages.

3. Trained hostage negotiators shall be used in any hostage negotiation and if feasible, the opinions of the trained negotiators and psychological and psychiatric profiles of the inmates involved shall be considered prior to any use of force.

J. Medical Examination

An inmate shall be examined by medical staff in the following situations:

1. Non-routine use of force or restraints
2. Planned use of force or restraints

K. Reports

1. Except for the routine use of restraints for escort or transportation of inmates (within and outside of the institution), a log shall be kept noting the:

    a. name of the inmate restrained

Moorman - 005535

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 13 |

      b.    reason for the restraint
      c.    type of restraint used
      d.    time of initial restraint
      e.    time of authorization
      f.    health authority or designee
      g.    time monitored
      h.    name of the person monitoring;
      i.    time of release

2. If possible, any use of physical force shall be documented through the use of a video-tape recorder, movie camera or other photographic means starting with instruction to staff prior to intervention, intervention itself and post intervention debriefing.

3. Any use of chemicals, non-routine mechanical restraints, batons, tasers, electric disablers and deadly physical force shall be reported in accordance with Corrections Policy and Procedure 8.6 (Extraordinary Occurrence Report) and the institution shall have appropriate documentation including incident reports, reports of witnesses, and others.

L. Limitations of Force for Probation and Parole

To the extent possible, a situation involving the use of force shall be avoided by the officer. In an unavoidable situation, assistance may be sought by the officer from the local law enforcement agencies or a fellow Probation and Parole officer. Only that force necessary to bring the situation under control shall be applied, and only for as long as it is needed to eliminate the threat or resolve the situation that initially justified the use of force. All injuries shall be treated promptly and reported fully in writing.

1. Force, when used, shall be:

    a.    only used as a last resort

    b.    reasonable and necessary

    c.    not excessive or inappropriate

2. An officer may use force, as otherwise justified under KRS Chapter 503 or other applicable law of the Commonwealth of Kentucky, in the following situations:

    a.    execution of his duty

    b.    self protection

| Policy Number | Effective Date | Page |
|---|---|---|
| 9.1 | January 6, 2017 | 14 |
      c.    protection of a third party

      d.    prevention of escape

      e.    effecting an arrest

      f.    in other situations for which Kentucky law authorizes the use of such force.

3.    Reports for Probation and Parole Officers

      a.    Any incident involving the use of force, except during transport or arrest without incident, shall be reported verbally by the officer immediately to the District Supervisor who shall report the incident to the Director of Probation and Parole or his designee. The officer shall submit a written report to the Supervisor documenting an accurate and detailed description of the incident. The report shall be completed on the date of the incident. The officer shall have the right to consult with legal counsel prior to providing an oral or written statement regarding the use of force. The District Supervisor shall investigate the incident, as necessary, and prepare a written report to the Assistant Director of Probation and Parole or his designee within ten (l0) working days.

      b.    The report shall include:

          (l)    A detailed description of the incident

          (2)    A list of all persons involved in the incident, noting their status as staff, offender, or other person

          (3)    Injury or damage to personal property

Moorman - 005537