## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

CURTIS MOORMAN, ET AL.                                    PLAINTIFFS

v.                                                        No. 5:18-cv-21-BJB

JESSE COOMBS, ET AL.                                      DEFENDANTS

* * * * *

### ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

A jury found Defendants Jesse Coombs and Brendan Inglish, former Kentucky State Penitentiary officers, liable for excessive force and awarded $5000 each to Plaintiffs Curtis Moorman and Andre Fant. Verdict (DN 149) at 14, 20. The jury found that these two officers caused the use of excessive force, in violation of the U.S. Constitution's Eighth Amendment, when they supervised officers who placed the two inmate-Plaintiffs in restraint chairs after they'd been detained following a prison riot. The officers moved for judgment as a matter of law both during the trial and after the verdict.

Their renewed motion advances two arguments. First, they say the verdict wrongly rests on "per se" liability for use of the restraint chair. Post-Trial Motion (DN 161-1) at 2–4. Second, they contend that reasonable reliance on their own supervisors' orders forecloses liability. *Id.* at 3–4. But because the jury had a legally sufficient evidentiary basis for the verdicts against both Defendants, the renewed motion fails.[1]

### I. Judgment as a Matter of Law

After "a party has been fully heard on an issue during a jury trial," a court may grant judgment as a matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). A Rule 50(a) motion "may be made at any time before the case is submitted to the jury," and if denied (as the officers' was midtrial), the moving party "may file a renewed motion," under Rule 50(b), within 28 days after entry of judgment.

---

[1] This opinion generally discusses two Plaintiffs and two Defendants, even though the trial encompassed three of each. The liability verdict and corresponding motion for judgment, however, necessarily affects only the two Plaintiffs awarded damages (Moorman and Fant) and the two Defendants found liable (Coombs and Inglish).

Trial judges may grant a renewed motion only if, "viewing the evidence in a light most favorable to the non-moving party [and] giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012) (citation omitted). And for such a motion to succeed, it "must overcome the substantial deference owed a jury verdict." *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016) (citation omitted).

## A. Per Se Liability

This trial involved two theories of liability—the use of shock shields and restraint chairs—involving three inmate-Plaintiffs and three officer-Defendants.[2] The jury ultimately found that two Defendants—Coombs and Inglish, who brought this post-trial motion—supervised other officers who used excessive force against Moorman and Fant, the two Plaintiffs awarded damages. The jury rejected the claim that a third Defendant—Deboe—personally used excessive force by applying a shock shield to Plaintiffs Moorman, Fant, and a third Defendant—Kareem Edwards.

Before the jury reached this conclusion, the Court instructed it to determine whether Coombs and Inglish satisfied the conditions for supervisory liability based on the unconstitutional actions of others. That is, whether they "[s]upervised … officers who used excessive force," "[o]bserved or had reason to know that excessive force would be or was being used," and "[h]ad both the opportunity and the means to prevent the harm" when those supervised officers "placed the Plaintiffs into restraint chairs." Jury Instructions (DN 148) at 7. That required a predicate finding that the supervised officers "intentionally used force," "maliciously and sadistically for the purpose of harming the Plaintiff, and not in a good-faith effort to maintain or restore security or order," and ultimately "harmed the Plaintiff." *Id.* These instructions were agreed to by the parties and consistent with the requirement that "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

The officers complain, however, that the "crux of Moorman's and Fant's argument is that placing them in a restraint chair" instead of in a cell "was a per se violation of the Eighth Amendment." Motion at 2. They characterize the Plaintiffs' theory of liability as hinging on the availability of "a better, less restrictive alternative

---

[2] After raising qualified immunity as an affirmative defense in their answer, *see* DN 30 ¶ 13, the Defendants never returned to this argument in any meaningful way. So that doctrine played no role in the analysis at trial or in response to this motion. *Cf. Wheatt v. City of East Cleveland*, 741 F. App'x 302, 303–05 (6th Cir. 2018) (qualified immunity forfeited because defendants never raised the defense after answer).

to the restraint chair." *Id.* at 3.  And they describe a decision from the Eastern District of Kentucky that held "placement in a restraint chair following … violent attacks on staff was not excessive per se." *Id.*  (citing *Degolia v. Kenton County*, 381 F. Supp. 3d 740, 760 (E.D. Ky. 2019)).

But neither the Plaintiffs' proof nor the Court's instructions were so narrow. The jury had to "consider all of the circumstances" in answering whether the force used was excessive, whether the supervisors should've known this, and whether they could've intervened to prevent the harm.  Jury Instructions at 4, 7.  Likewise, the jury heard competing argument and proof regarding whether the supervisors acted in good faith.  These questions didn't turn on a binary choice between restraint chair (or shock shield) versus a cell and handcuffs, but rather on all the circumstances facing the officers when they acted.  The jury had to evaluate "reasonableness" in context: the questions "turn[ed] on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

This reflects the Sixth Circuit's assessment of the constitutionality of restraint tactics *in context*.  For example, in *Champion v. Outlook Nashville, Inc.*, the Court of Appeals affirmed a jury verdict finding excessive the use of pepper spray against a detainee "who had stopped resisting arrest and posed no flight risk."  380 F.3d 893, 901 (6th Cir. 2004).  In those circumstances, the panel held, the use of a restraint tactic against an already incapacitated detainee was "not objectively reasonable." *Id.* The Court didn't categorically classify the use of pepper spray as per se unreasonable.

This all-facts-considered approach is consistent with the jury instructions and proof here.  The jury's verdict did not require the use of restraint chairs to be per se unreasonable; it rested on a fact-driven determination that the use was unreasonable when directed against a compliant individual.  *See* Jury Instructions at 4, 7.  The verdict itself reveals the jury's careful parsing of the circumstances: it delivered a split decision absolving one Defendant of any liability and finding Coombs and Inglish not liable for other claims against them.  This is far from the simplistic thumbs-up-or-down analysis that the co-Defendants describe.

Much of the motion's contrary argumentation rehashes factual disputes and characterizations that counsel presented to the jury.  These post-trial contentions emphasize the volatile circumstances the Defendants confronted following fights in the prison yard, and the physical resistance of the inmate-Plaintiffs:

> The actions of the Plaintiffs were not simply minor infractions of prison regulations but criminal assaults on the staff. It was not objectively unreasonable to believe that placing the Plaintiffs in restraint chairs was necessary for the safety of the staff. In fact, the decision was

> completely reasonable because the moment the staff began to release the Plaintiffs, active resistance resumed.

Reply (DN 171) at 2. This position finds support in the proof presented at trial. But, then again, so does the inmates' position that they had stopped resisting. Inglish himself testified on direct examination that he didn't "recall anything" related to Fant "doing anything resistant or dangerous while he was being put in the restraint chair." Trial Tr., Vol. I (DN 164) at 71:16–21. Coombs gave similar testimony about Moorman. *See id.* at 24:6–9 (agreeing that he "had no problems with Moorman … from the time he was brought into [Three Cell House] until the time he was put in the restraint chair"); *id.* at 23:13–24:1 (confirming that Moorman "didn't resist … or fight back" after entering Three Cell House). And the Plaintiffs offered video footage of the events into evidence. *See* Plaintiffs' Trial Exhibit 4. Because the questions of resistance and reasonableness pose classic factual disputes, the law reserves them for the jury rather than the judge.

The jury relied on evidence that Moorman and Fant complied for the relevant period when the officers made the decision to use the restraint chair—especially when giving the Plaintiffs "the benefit of all reasonable inferences" in this Rule 50 context. *Balsley*, 691 F.3d at 757. And that evidence adequately supports the verdict and award of damages to the Plaintiffs.

## B. Reliance on Supervisors' Orders

The officers also challenge the verdict because they say they reasonably acted on their own supervisors' orders in supervising *other* officers who used the restraint chairs.

On this point, the Court instructed the jury that "a subordinate officer cannot escape liability if, in following a superior's order, the subordinate knew or should have known that executing the order would violate the prisoner's rights." Jury Instructions at 4. Again, the Court discussed this instruction with the lawyers and framed it in a manner consistent with Sixth Circuit caselaw. *See, e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (collecting cases explaining that "[r]eliance on a superior's orders does not in itself dissipate all liability").

The officers' motion doesn't take issue with that instruction or that statement of the law. Indeed, they acknowledge that "officers are not shielded from liability merely because they followed orders." Motion at 3. The argument to overturn the jury verdict, therefore, reduces to a factual contention that "urgent circumstances" justified these officers' reliance on orders here. *Id.* In other words, the officers had the chance to present this factual theory to the jury, and the jury rejected it.

What remains for the Court to assess, then, is whether evidence supported the jury's verdict. And it did. Based on the evidence in the record, the jury reasonably

found that these circumstances were *not* urgent—and that the context pointed *against* reliance on their supervisors' authorization to use the restraint chair.

For one, the evidence doesn't clearly establish any "orders" to use the chair in the first place. The Extraordinary Occurrence Report—which the officers attached to their motion as evidentiary support—discusses the supervisors' giving "permission … to place" the Plaintiffs in the restraint chair. DN 161-2 at 2, 4. And the officers' testimony at least raises the possibility (if not outright confirming) that their supervisors gave "permission," not explicit orders. Trial Tr., Vol. I at 30:7–31:2; Trial Tr., Vol. II. (DN 166) at 5:24–6:1.

But even if the supervisors had given direct orders, the jury could've still found fault based on the officers' position to know "that executing the order would violate the prisoner's rights." Jury Instructions at 4. And the jury reasonably found that these Defendants had the opportunity to prevent the restraint-chair harm but failed to do so. Any "order" would've come from a supervisor speaking over the radio and from outside the room. *See* Trial Tr., Vol. I at 31:3–14; Trial Tr., Vol. II. at 5:24–6:1. The officers, meanwhile, had the chance to observe the situation firsthand as each inmate entered Three Cell House. DN 161-2 at 2–5. Ample evidence supports the jury's finding that such an order (and the officers' eventual decision to use the restraint chair) was not reasonable—even though the officers and their lawyers reasonably (if unsuccessfully) argued that it was. This was a close question for the jury to decide. And the officers can't avoid liability after the fact by second-guessing that determination.

## ORDER

The Court denies the officers' renewed motion for judgment as a matter of law (DN 161).

Benjamin Beaton, District Judge
United States District Court

February 17, 2026

5